**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 17 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO-SE:

**ROBERT SPEARS**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ROBERT SPEARS, )
)
    Appellant-Petitioner, )
)
        vs. )    No. 49A05-1103-PC-110
)
STATE OF INDIANA, )
)
    Appellee-Respondent. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable Michael S. Jensen, Magistrate
Cause No. 49G20-0510-PC-184297

**July 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-petitioner Robert Spears appeals the denial of his petition for post-conviction relief, claiming ineffective assistance of both trial and appellate counsel. Spears also argues that he was denied due process of law because he claims that the prosecutor, trial judge, and police officers all engaged in misconduct. Finally, Spears contends that he is entitled to a new trial on the basis of newly discovered evidence. Concluding that Spears has failed to show that he received ineffective assistance of counsel and finding no other error, we affirm the judgment of the post-conviction court.

FACTS

The facts, as reported in Spears's direct appeal, are as follows:

Spears regularly sold tablets of hydrocodone (Vicodin) and alprazolam (Xanax) to his niece, Shannon Welsh, for over a year. Welsh also occasionally sold pills she obtained from Spears to other persons and gave the proceeds to Spears. Welsh knew that Spears had his prescriptions for the drugs filled towards the end of each month, and the two would arrange to meet shortly thereafter for Welsh to obtain some pills. Sometimes Welsh initiated the contact, and sometimes Spears did.

At some point, Welsh and her family obtained a protective order against Spears because of allegedly threatening behavior towards them. Welsh and her family contacted law enforcement for assistance with Spears's alleged threats. Indianapolis Metropolitan Police Department ("IMPD") Detective Noble Duke met with Welsh and her family several times to discuss Spears. At one of these meetings, Welsh told Detective Duke about Spears selling controlled substances. Eventually, Welsh agreed to make a controlled buy of drugs from Spears as a way "to try to help [Welsh's family] with their problems." Tr. p. 286.

On October 25, 2005, Welsh contacted Detective Duke to let him know that Spears probably had medication in his possession. Welsh went to an IMPD district office, where she was thoroughly searched by a female officer.

2

Officers also thoroughly searched Welsh's vehicle. No contraband was found on Welsh or in her car. She was given money that was photocopied beforehand and outfitted with a transmitting device.

Welsh drove directly to Spears's home in Indianapolis, followed by IMPD officers. Detective Duke parked where he could see the rear of Spears's home and another group of officers were parked where they could see the front. When Welsh pulled up to Spears's house he was standing outside. Welsh asked Spears if he had any pills, and Spears responded that he wanted to drive around the block to see if there were any police officers observing them. Spears drove around the block in his truck, with Welsh following in her car. Officers observed Welsh driving, although they temporarily lost sight of her at one point. At the end of the block, Welsh drove up beside Spears and told him she did not see anybody, and they both drove back to Spears's house and went inside.

No one else was inside the home aside from Welsh, Spears, and Spears's four-year-old son. Officers could not directly see Spears's back door for some of the time Welsh was inside, but over the transmitter they heard no one enter the house while Welsh was there. Welsh again asked if Spears had any pills for sale, and he said that he did. She requested ten Xanax and six Vicodin pills, which he gave to her in exchange for fifty dollars.

Welsh then left and drove directly to a pre-arranged location, followed by Detective Duke. Welsh gave Detective Duke six pills containing hydrocodone, a schedule III controlled substance, and nine pills containing alprazolam, a schedule IV controlled substance. A search of Welsh and her vehicle uncovered no other contraband. Police then went to Spears's house and arrested him. During a search incident to arrest, officers found on Spears's person two prescription bottles containing hydrocodone and alprazolam, and cash that matched the buy money provided to Welsh.

The State charged Spears with Class B felony dealing in a schedule III controlled substance and Class C felony dealing in a schedule IV controlled substance. Spears moved to suppress evidence recovered after his arrest, contending the arrest was not supported by probable cause because the

controlled buy was not conducted properly. The trial court denied the motion to suppress.

Spears v. State, No. 49A02-0708-CR-696 (Ind. Ct. App. Sep. 25, 2008).

Defense counsel Mary Zahn filed several pretrial motions on Spears's behalf and represented him at various pre-trial hearings and at trial. Prior to trial, the defense deposed Welsh, Detective Duke, and three other law enforcement officers that were involved in the controlled buy.

On October 24, 2006, Zahn filed a motion of intention to introduce evidence that Welsh had perpetrated several offenses after her involvement in the controlled buy, that she had not been prosecuted for those crimes, and that Detective Duke lied at his deposition when he denied that he knew about Welsh's alleged crimes. Spears argued that this evidence was admissible to impeach both Welsh and Detective Duke.

Zahn represented Spears at the first hearing on the motions that was held on December 6, 2006. Zahn questioned Detective Duke about possible defects regarding the transaction and the poor quality of the recording of the buy. Zahn also argued that a gun clip that Welsh had attempted to bring into Spears's home should be admitted at trial to show that the police were trying to entrap Spears on a gun charge that would expose him to federal prosecution.

The State argued that if such evidence were allowed, it would open the door to the admission of Spears's criminal history. The trial court ruled that the gun clip evidence was not relevant to this case, and Spears was cautioned that bringing in evidence of the

gun clip would expose Spears to the admission of additional evidence that would harm him.

Zahn represented Spears at a second hearing on February 28, 2007. Zahn questioned Welsh and two police officers who were involved in the case about alleged gaps in the controlled buy. The trial court subsequently denied Spears's motion to suppress, finding that the buy was sufficiently controlled and that the police officers had probable cause to arrest Spears and search him.

Spears's jury trial commenced on June 21, 2007. The State filed a motion in limine seeking to exclude any reference to, among other things, "allegations of criminal activity involving [Welsh] which did not result in arrest and conviction" or any allegation that Welsh received favorable treatment for her cooperation in this case. Appellant's App. p. 1159-60. The trial court granted a portion of the State's motion after Zahn asserted that it was Spears's intention to make an offer of proof concerning those issues at trial. The trial court also granted the State's request to limit evidence of Welsh's drug use to the day of the controlled buy.

Welsh initially indicated to the trial court that she would not testify. However, after conferring with the prosecutor, she elected to testify. Zahn confirmed that Welsh had not been promised leniency or other assistance in exchange for her testimony. Zahn then impeached Welsh with the fact that she had a prior robbery conviction.

Zahn also developed evidence through Welsh that he and Detective Duke had planned the controlled buy to eliminate problems that Welsh and her family were

5

experiencing with Spears. Welsh admitted that she was an extensive drug abuser when the controlled buy occurred. Welsh admitted that Detective Duke had come unsolicited to her home to speak to her and that Spears did not offer her any pills during the actual buy. Zahn then impeached Welsh with her deposition testimony that differed from her trial testimony about Spears's location when Welsh arrived at his home, where Welsh had placed the pills after receiving them from Spears, whether Welsh was searched after the buy, and whether her vehicle was searched following the transaction.

Zahn established through Detective Duke that he had never worked with Welsh before, that Spears had been providing Welsh with pills for a year, and that Duke was acting with Welsh's family to help solve their problems with Spears. Zahn also probed what Spears alleged were defects in the controlled buy.

Zahn impeached Detective Duke with his deposition testimony as to whether he had searched Spears inside or outside the residence. Zahn also impeached another officer, Chris Reed, about whether he had initially testified in his deposition that only pills were found on Spears and not the buy money. During the testimony of Welsh, Detective David Miller, and Detective Duke, Zahn objected to the admission of the pills or the buy money into evidence on the same grounds that had been argued in the motion to suppress.

Zahn argued at trial that evidence that Welsh had been involved in the ransacking of Spears's home should be admitted into evidence to establish Welsh's motivation for participating in the buy. The trial court determined that evidence about the prior dealings

6

among Spears's family, including ransacking the residence, was not relevant to the instant charge.

Thereafter,

Spears renewed his objection to the introduction of evidence—the prescription pill bottles and cash—recovered during the search incident to arrest. Spears also objected to the introduction of a recording of the audio transmissions during the controlled buy on the basis that it was largely inaudible. The trial court overruled the objection, and also permitted a transcript of the recording to be provided to the jury while it was played in court, but the transcript was not introduced into evidence. Before the recording was played, Spears requested that it be played in its entirety. Later, Spears requested the jury to be admonished that some parts of the recording were inaccurate; Spears was concerned about references to other alleged criminal activity by him. The trial court refused to give the admonishment, noting that Spears had requested that the entire recording be played to the jury.

Spears, slip op. at 5. Welsh and Spears were discussing some of the "bad blood" that was occurring in the family, including the ransacking of Spears's home on the recording. Tr. p. 418. Spears decided to testify at trial against Zahn's advice. Spears admitted that Welsh had asked him for pills, that he quoted her a price for the drugs, that Welsh had produced money for the pills, and that she left with pills.

Following the presentation of evidence, the jury found Spears guilty as charged. The trial court sentenced Spears, who has an extensive criminal history, to twenty years on the Class B felony dealing conviction and to eight years on the Class C felony dealing conviction, to be served consecutively.

On direct appeal, Spears was represented by attorney Katherine Cornelius, who presented the following four issues:

7

I. whether the trial court properly admitted evidence recovered after Spears's arrest;

II. whether the trial court properly admitted a recording of a controlled buy;

III. whether there was sufficient evidence to rebut Spears's entrapment defense; and

IV. whether Spears's sentence is inappropriate.

We affirmed Spears's convictions, but revised his sentence and ordered his individual sentences to be served concurrently rather than consecutively. Id., slip op. at 12-14.

On October 28, 2009, Spears filed an amended petition for post-conviction relief,[1] and evidentiary hearings were conducted in June 2010. Zahn testified that her strategy regarding the cross-examination of the officers involved in the controlled buy was to review the depositions and suppression testimony of the police officers and ask them about inconsistencies between that testimony and their trial testimony. Zahn did not believe that introducing the depositions and suppression hearing transcripts themselves was the proper method of impeaching the officers.

For instance, Zahn reviewed Detective Duke's deposition and suppression hearing testimony and prepared to impeach him at trial. Zahn did not impeach Detective Duke on every inconsistency between his trial and previous testimony as a matter of strategy because she believed that some of Detective Duke's responses at trial were beneficial to Spears.

---

[1] Spears previously filed petitions for post-conviction relief on November 26, 2008, and July 24, 2009.

Zahn's theory at trial was to pursue an entrapment defense based solely on the pills. Zahn did know about the gun clip and realized that Spears wanted to introduce evidence about it at trial. However, Zahn decided not to present evidence about the gun clip because she believed that such evidence would have opened the door as to Spears's criminal history, including a prior federal firearm conviction.

Zahn also wanted to prevent the admission of the recording of the controlled buy into evidence because it was inaudible. Zahn further planned to have admitted evidence of Welsh's prior bad acts into evidence, but she felt constrained by the trial court's grant of the State's motion in limine. Zahn believed that her strategy was sound, that they were "in a good position," and she did not call any of Spears's witnesses as a result. Tr. p. 203-04.

Cornelius testified that she remembered not raising the State's failure to rebut Spears's specific gun entrapment theory because there was no evidence at trial to support that claim. Spears introduced a United States Department of Justice press release at the post-conviction hearing reporting that Detective Duke pleaded guilty and had been sentenced in June 2008, to community corrections, home detention, and community service for obstruction of justice for unlawfully disclosing the contents of federally authorized wiretap information. Welsh also attempted to recant her trial testimony.

The deputy prosecutor who tried Spears's case testified that no charges had been filed against Welsh for the alleged crimes she committed after agreeing to participate in the controlled buy and that Welsh did not receive anything in exchange for her testimony

at Spears's trial. The deputy prosecutor also acknowledged that Spears had deposed all of the police officers involved in the investigation of the crimes in which Welsh was allegedly involved. The police officers confirmed that no criminal charges had been filed against Welsh and that no consideration had been given to her in exchange for the State's decision not to charge Welsh.

The post-conviction court denied Spears's request for relief on February 22, 2011. The post-conviction court determined, among other things, that Welsh's testimony at the post-conviction hearing was "not credible," in light of her prior testimony at the suppression hearing and at trial, and given the internal inconsistencies in her post-conviction testimony. As to Detective Duke, the post-conviction court determined that Spears had failed to show that the purported newly discovered evidence was material or relevant to his case. Finally, the post-conviction court determined that neither trial counsel nor appellate counsel were ineffective. Spears now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review Generally; Post-Conviction Relief

The petitioner in post-conviction proceedings bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a

10

conclusion opposite that reached by the post-conviction court. Id. Put another way, the defendant must convince us that there is "no way within the law that the court below could have reached the decision it did." Stevens v. State, 770 N.E.2d 739, 745 (Ind. 2002). A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. Fisher, 810 N.E.2d at 679. In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

## II. Spears's Claims

### A. Ineffective Assistance of Trial Counsel

Spears claims that his petition for post-conviction relief should have been granted because Zahn, his trial counsel, failed to properly investigate the facts and circumstances of the case regarding the defense of entrapment, did not properly cross-examine and impeach the police officers and the confidential informant, and failed to lodge proper objections at trial. Spears further contends that Zahn failed to interview potential witnesses on his behalf.

In addressing Spears's contentions, we initially observe that he must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). Specifically, a defendant must show that counsel's performance was deficient. Id. at 687. This requires a showing that counsel's representation fell below an objective standard of

11

reasonableness and that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." Id. In other words, the standard asks whether, "considering all the circumstances," counsel's actions were "reasonable[] under prevailing professional norms." Id. at 688.

Second, a defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, that is, a trial where the result is reliable. Id. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id. We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002).

Trial counsel should be afforded considerable discretion in the choice of strategy and tactics. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. Id. In other words, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so

12

deficient or unreasonable as to fall outside of the objective standard of reasonableness. Autrey v. State, 700 N.E.2d 1140, 1141 (Ind. 1998).

## 1. Cross-Examination

As for Spears's contention that Zahn failed to accurately impeach the police officers for alleged inconsistencies among the depositions, suppression hearing, and trial testimony, we initially observe that the nature and extent of cross-examining a witness is a matter of trial strategy that is left to trial counsel. Waldon v. State, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997).

The record shows that Zahn prepared for cross-examination by reading the State's witnesses' deposition and suppression hearing testimony. Zahn identified inconsistencies, particularly regarding the various "controls" that pertained to the buy, and cross-examined the State's witnesses about them. Tr. p. 127-35, 292-305. Zahn impeached Welsh, Detective Duke, and another officer with inconsistencies between their deposition and trial testimony. Id. at 127-35, 314-15, 381, 384. As noted above, Zahn chose not to impeach Detective Duke with every inconsistency between his previous testimony and his trial testimony because she believed that some of Detective Duke's trial testimony was favorable to Spears.

In short, the record demonstrates that Zahn's cross-examination strategy was a deliberate choice that we will not second guess, and Spears has failed to rebut the strong presumption that Zahn's cross-examination was a reasonable exercise of professional judgment. Stevens v. State, 770 N.E.2d 739, 746 (Ind. 2002). As a result, the post-

conviction court did not err in denying Spears's petition for post-conviction relief on this basis.

## 2. Gun Clip

Spears next maintains that Zahn failed to introduce evidence of the gun clip as part of the entrapment defense. Notwithstanding this contention, Zahn's trial strategy was to pursue the entrapment defense using only evidence concerning the pills. Zahn developed this theory through Welsh's testimony that she worked with Detective Duke to eliminate problems that Welsh and her family were having with Spears, and Detective Duke also echoed this theory during his cross-examination. Tr. p. 113-15, 286. Zahn also had Welsh admit that Detective Duke had contacted her, and Zahn elicited testimony from Detective Duke that his sole source of information regarding the fact that Spears had been supplying Welsh with pills for a year was Welsh—someone with whom Detective Duke had never worked before. And the entrapment defense was the theme of Zahn's closing argument.

Zahn knew about the gun clip and Spears's opinion about it. However, the record shows that Zahn made a conscious decision not to pursue a defense strategy that involved the gun clip because such evidence could have opened the door to evidence of Spears's criminal history, including the fact that he had recently served an executed sentence for a federal gun-related conviction. In our view, Zhan's strategy was not unreasonable, because that evidence would have negatively impacted Spears's credibility. Moreover, Spears has failed to show that the gun clip had much—if any—relevance to the drug

charges that he was facing. And Spears's claim of prejudice consisted only of his unsupported claim that had the jury known about the gun clip, he would have been acquitted. Such bald assertions do not meet a petitioner's burden on appeal to show, by a preponderance of the evidence, prejudice as a result of purported professional errors. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). For all of these reasons, Spears's claim of ineffective assistance of counsel fails with regard to evidence involving the gun clip.

### 3. Statements, Depositions, and Transcripts

Spears also claims that Zahn was ineffective because she should have entered the statements, depositions, and testimony of unspecified witnesses into evidence so they could have been properly impeached. However, Zahn did not believe that admitting the documents themselves into evidence was the proper method of impeaching the witnesses. Indeed, Zahn cross-examined the witnesses, and Spears has failed to show that this method of impeachment was improper. Again, we will not second guess Zahn's strategy, and Spears's claim fails.

### 4. Characterization of Evidence and Re-assertion of Motion to Suppress; Co-Counsel Request

Spears makes the apparent assertion that some of Zahn's statements were misleading because those statements were contradicted by deposition testimony of witnesses. However, many of the statements involved Zahn's questioning of witnesses to develop evidence before the jury. Moreover, Spears's alleged claims about Zahn's

15

improper statements are not supported by citation to the record. Thus, the claims are waived because Spears has failed to provide a cogent argument in support of his contention. See Bonner v. State, 776 N.E.2d 1244, 1247 n.3 (Ind. Ct. App. 2002) (holding that a party waives an issue on appeal when a cogent argument is not developed or when there is not adequate citation to the record or to supporting authority).

As for the motion to suppress, Spears contends that Zahn failed to object at trial and reassert the argument at trial. However, the record shows that Zahn did object at trial but the objections were overruled. In short, Zahn preserved the issue for appeal, and we did, in fact, address the issue in Spears's direct appeal. Spears, slip op. at 3-5.

Finally, Spears asserts in one sentence that Zahn was ineffective because she failed to enter a motion for him to act as co-counsel. However, it is clear that a defendant has no right to hybrid representation in Indiana. Sherwood v. State, 717 N.E.2d 131, 135 (Ind. 1999). In short, Spears could not have been prejudiced by the deprivation of something to which he had no right.

### 5. Additional Defense Witnesses

Spears next claims that Zahn was ineffective because she did not depose various witnesses and call them to testify at trial. The evidence that these witnesses would purportedly have offered may be grouped into three main categories: 1) evidence that Spears was being set up for a gun charge; 2) evidence that Welsh was a drug addict; and 3) evidence that Welsh had committed crimes for which she had not been charged. Appellant's Br. p. 28.

16

As discussed above, Zahn's strategy not to introduce evidence regarding the gun clip was reasonable. And offering witness testimony that Spears was being set up for a gun charge would not have furthered that strategy. Also, Welsh admitted in response to Zahn's questioning, that she was an extensive drug abuser when the controlled buy took place. Any additional evidence pertaining to Welsh's drug use would have been cumulative, and therefore, likely inadmissible.

As to evidence that Welsh had committed crimes for which she had not been prosecuted, Zahn did make an attempt to convince the trial court to allow that evidence. The trial court made preliminary rulings that Spears would be permitted to introduce such evidence if he could establish a nexus between the lack of charges being filed and Welsh's cooperation in the prosecution. However, such a connection was never shown because the State did not offer Welsh any consideration for her testimony. Tr. p. 55, 416-17, 426. Moreover, the trial court granted the State's motion in limine, thus preventing Sears from offering such evidence.

In any event, Zahn did impeach Welsh with her robbery conviction that is permitted under Indiana Rules of Evidence 609(a). In sum, Zahn cannot be said to have been ineffective for not presenting evidence from witnesses whose testimony was irrelevant and would have been in violation of the trial court's order in limine.

### 6. Recording of Controlled Buy

Spears next argues that Zahn was ineffective for failing to introduce the original cassette tape of the buy into evidence, even though he specifically acknowledges that the

17

original recording was lost or erased before Zahn received Spears's file from a previous defense counsel of record. Spears does not explain the efforts that Zahn allegedly failed to make to retrieve the lost tape or what measures she could have taken to locate the missing recording. Therefore, Spears has failed to show that Zahn's performance in this regard was deficient. The record also does not support Spears's contention that Zahn failed to challenge the accuracy and reliability of the tape recording. An unenhanced copy of the tape was admitted into evidence, and part of Zahn's trial strategy was to challenge the admissibility of the recording on the basis that it was inaudible. Therefore, contrary to Spears's contention on appeal, Zahn was not ineffective for failing to object to the lack of expert testimony to authenticate the recording. The tape admitted was not enhanced and Detective Duke, who listened to Welsh and Spears during the buy, authenticated the tape by testifying that he had reviewed the tape and that it was accurate. This was a sufficient foundation to render the recording admissible. Indiana Evid. Rule 901(a), (b)(1).

Spears also maintains that Zahn should not have agreed to allowing the entire tape of the controlled buy to be played for the jury. However, Zahn had tried to have evidence of a family feud introduced into evidence that would explain Welsh's motivation for participating in the controlled buy. Zahn's apparent strategy was to show that Welsh had ulterior motives to lie about buying drugs from Spears, part of which was the apparent bad blood caused by Welsh's participation in ransacking Spears's residence that was

18

discussed during the controlled buy. Zahn's insistence on having the entire recording played to the jury was a method of placing this information before it.

Spears maintains that he was prejudiced because the recording contained unspecified "false and prejudicial allegations of misconduct." Appellant's Br. p. 31. However, Zahn's apparent strategy was that any potentially prejudicial content on the recording would be overshadowed by the feud evidence that dovetailed into the overall entrapment defense. Again, we decline to second guess Zahn's strategy. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997). As a result, Spears's claim that Zahn was ineffective on this basis fails.

### 7. Impeachment of Welsh

Finally, Spears argues that Zahn was ineffective because she failed to present evidence that the State had declined to prosecute Welsh for several crimes she had committed. Spears contends that the State's decision not to prosecute Welsh was to obtain her testimony against Spears. However, as noted above, the trial court ruled that such evidence would be admissible only if the defense could establish a nexus between the State's failure to prosecute and Welsh's testimony at trial. The trial court also granted the State's motion in limine prohibiting such testimony.

The record shows that the police officers who had investigated the alleged crimes had been deposed, and their deposition testimony did not support Spears's theory that the State declined to prosecute Welsh in exchange for her testimony. It was clearly established that the State did not offer Welsh any consideration for her testimony. In

19

light of the circumstances, simply offering the testimony of various witnesses who claimed that Welsh committed crimes would not have established the nexus required to make the desired impeachment evidence admissible. And Zahn did not introduce such evidence because the trial court's rulings prohibited her from doing so. Thus, Spears has failed to show that Zahn was ineffective on this basis.

### B. Ineffective Assistance of Appellate Counsel

Spears next claims that Cornelius, his counsel on direct appeal, was ineffective because additional issues should have been raised, including the defense of entrapment and the official misconduct of the trial judge, prosecutor, and police officers. Spears maintains that false evidence was presented to the jury and that relevant evidence was concealed from the jury. As a result, he argues that these issues should have been raised on direct appeal.

We note that the standard set forth above applies to both claims of ineffective assistance of trial and appellate counsel. Rhoiney v. State, 940 N.E.2d 841, 845 (Ind. Ct. App. 2010), trans. denied. Our supreme court has recognized three types of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. Wrinkles v. State, 749 N.E.2d 1179, 1203 (Ind. 2001).

When a petitioner claims that he or she was denied the effective assistance of appellate counsel because various issues were not presented, we are particularly deferential to counsel's strategic decision to exclude certain issues in favor of others,

unless such a decision was unquestionably unreasonable. Taylor v. State, 840 N.E.2d 324, 338 (Ind. 2006). However, even if we determine that counsel's choice of issues was not reasonable, a petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different in order to prevail. Id. We must determine "(1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the issues that were not raised are clearly stronger than the raised issues." Gray v. State, 841 N.E.2d 1210, 1214 (Ind. Ct. App. 2006). Ineffective assistance of counsel is rarely found when the issue is failure to raise claims on direct appeal. Taylor v. State, 717 N.E.2d 90, 94 (Ind. 1999). This is so because the decision about what issue or issues to raise on appeal is one of the most important strategic decisions that an appellate counsel makes. Bieghler v. State, 690 N.E.2d 188, 193 (Ind. 1997).

In this case, Spears argues, among other things, that Cornelius was ineffective because she did not "properly raise the entrapment defense on the planting of false evidence, and for failing to properly argue that the planting of false evidence is in violation of rule 901." Appellant's Br. p. 34. Presumably, Spears is contending that Cornelius should have argued on direct appeal that the State did not rebut the gun clip entrapment defense. However, as Cornelius explained to Spears during the consultation leading to his direct appeal, such a claim could not be raised because there was no evidence developed at trial to support it. Tr. p. 236-37, 239-40, 243.

21

Indeed, arguments raised on direct appeal must be based on matters that are contained in the trial record. Turner v. State, 508 N.E.2d 541, 543 (Ind. 1987). Cornelius did argue that the State had failed to rebut the drug buy entrapment defense based on the evidence in the record. Spears, slip op. at 10-12. And our review of the record demonstrates that Cornelius did not fail to "present this issue well." Bieghler, 690 N.E.2d at 193-95.

Spears also claims that Cornelius was ineffective because she did not challenge the admission of the controlled buy recording, the alleged misconduct of the judge, prosecutor, and police officers in "misrepresenting facts regarding the planting of false evidence," and numerous other claims of misconduct. Appellant's Br. p. 34.

Notwithstanding Spears's contentions, Cornelius raised four issues on direct appeal, including challenging the admission of evidence procured incident to Spears's arrest, the admission of the recording of the buy, the evidence negating his entrapment defense, and the appropriateness of the sentence. Spears, slip op. at 2. And through these efforts on appeal, Spears's aggregate sentence was reduced from twenty-eight years to twenty years. Id. at 12-14.

Part of Spears's burden on appeal is to convince us that the issues he claims that should have been raised—but were not—were clearly stronger than those that Cornelius did choose to raise. Spears fails to meet this requirement because he offers no argument comparing the merits of his proposed issues to those that were actually raised. Thus, Spears's claim of ineffective assistance of appellate counsel fails.

22

C.  Claims of Misconduct and Judicial Bias

Spears next argues that he is entitled to post-conviction relief because the evidence demonstrates that the prosecutor and the police engaged in various acts of misconduct, and that the trial court judge was biased against him.   We need not address the merits of these claims because, as mentioned above, the scope of the post-conviction remedy is limited to issues not known at the time of the original trial or that were unavailable on direct appeal.  If an issue was known and available, but not raised on direct appeal, it is waived.  Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001).

Here, all of the claims that Spears raises regarding alleged judicial bias and prosecutorial and police misconduct could have been raised on direct appeal.  Because they were not, Spears has waived these claims.

D.  Newly Discovered Evidence

Finally, Spears argues that his request for post-conviction relief should have been granted and that he is entitled to a new trial on the basis of newly-discovered evidence because Welsh attempted to recant her trial testimony at the post-conviction hearing. Moreover, Spears claims that because he established that Detective Duke pleaded guilty to the crime of obstruction of justice, that fact amounted to newly-discovered evidence that entitled him to post-conviction relief.

In resolving this issue, we note that new evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely

23

impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. Greenwell v. State, 884 N.E.2d 319, 328-29 (Ind. Ct. App. 2008). We analyze these factors with care, as the "basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." Id. at 329.

As for Welsh's attempt to recant her trial testimony, we note that a new trial is not warranted if the post-conviction court determines that the recantation is not credible. See id. at 329 (denying the petitioner a new trial based on the fact that the recantation of a witness who previously identified him as the murderer was inconsistent and implausible).

In this case, the post-conviction court specifically found that Welsh's testimony at the post-conviction hearing was inconsistent with her suppression and trial testimony. It also determined that the testimony was somewhat internally inconsistent, in that Welsh stated that Spears did not sell her pills, but she admitted to leaving money on the table. The post-conviction court found this testimony to be "not credible." Appellee's App. p. 30. Because we defer to the post-conviction court's factual findings, and given that Welsh's post-conviction testimony was not worthy of credit, Spears has failed to meet one of the nine factors for assessing the value of newly discovered evidence. Therefore, his claim fails. Greenwell, 884 N.E.2d at 329.

Finally, we note that Spears's introduction of evidence about Detective Duke's plea of guilty to obstruction of justice does not merit a new trial. More specifically,

24

Spears has failed to show that there is any connection between the crime to which Detective Duke pleaded guilty and the instant offense. And Detective Duke was sentenced for his conviction almost three years after Spears committed and was charged with his offense. Appellant's App. p. 41-42. Hence, we cannot say that Detective Duke's decision to plead guilty to obstruction of justice is relevant to the instant matter. It would, at best, only constitute impeachment evidence, and that type of evidence does not warrant a new trial. Greenwell, 884 N.E.2d at 328-29. As a result, Spears's request for post-conviction relief on the basis of newly-discovered evidence fails.

The judgment of the post-conviction court is affirmed.

DARDEN, J., and BAILEY, J., concur.