## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 18 2016, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Marce Gonzalez, Jr.<br>Dyer, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Christina D. Pace<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Larry Randolph,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 18, 2016

Court of Appeals Case No. 45A03-1504-CR-141

Appeal from the Lake Superior Court

The Honorable Diane R. Boswell, Judge

Trial Court Cause No. 45G03-1305-FA-13

**Mathias, Judge.**

[1]    Larry Randolph ("Randolph") was convicted in Lake Superior Court of two counts of Class A felony child molesting, two counts of Class B felony sexual

misconduct with a minor, Class C felony sexual misconduct with a minor, and Class C felony child molesting. Randolph was ordered to serve an aggregate term of sixty-eight years. Randolph appeals and presents two issues, which we restate as:

    I.   Whether the evidence was sufficient to support Randolph's conviction of Count II Class A felony child molesting and;

    II.  Whether Randolph's sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] In 2003, Randolph began dating J.E.'s mother ("Mother"). Randolph met J.E. later, in 2005, when she was five years old, after J.E. moved to Champaign, Illinois to live with Mother and Randolph. In 2006, Randolph, Mother, and J.E. moved to Gary, Indiana to live with J.E.'s grandfather. In March 2007, J.E.'s grandfather moved to a house on Tyler Street. J.E.'s grandfather, Randolph, Mother, J.E., and J.E.'s cousins, "D" and "J" all resided at the Tyler Street home.

[4] Mother struggled with drug addiction and left J.E. with Randolph on Labor Day in 2007, when J.E. was nine years old.[1] Randolph and J.E. continued to live with J.E.'s grandfather. Randolph became J.E.'s primary caregiver and

---

[1] J.E. saw Mother several years after she left, but Mother remains disconnected from J.E.'s life.

raised her as his own daughter. Shortly after Mother left, Randolph made J.E. touch his penis when they were alone in his bedroom. J.E. told her cousin "D" about the incident.

[5] In 2009, J.E.'s grandfather, J.E., Randolph, "D", and "J" moved to another home on Pennsylvania Street in Gary, Indiana when J.E. was ten years old. One year later, when no one else was home, Randolph came into J.E.'s bedroom that she shared with her cousins, put her on top of him, and made J.E. hump him. Both J.E. and Randolph were fully clothed during this incident. Another time, Randolph forced J.E. to perform oral sex on him in the basement of the home, which resulted in J.E. gagging and vomiting in Randolph's hand. On a different occasion while J.E. was watching television with "D" in the living room, Randolph told J.E. that he needed to talk to her about something school related. J.E. followed Randolph into his bedroom, and he locked the door. Randolph took off J.E.'s clothes, pulled down his pants, and then rubbed his penis against her vagina. He instructed her to say, "I love you, daddy," which J.E. refused to do. Tr. p. 74-75. J.E. cried and asked Randolph to stop, but he continued to rub his penis against her vagina. Tr. p. 75.

[6] Randolph began dating Pashiana Long ("Long") while he lived at the Pennsylvania Street home. Long, Long's daughter from a prior relationship, and Long's sister moved into J.E.'s grandfather's home in 2010. Long and Randolph's daughter was born in January 2012. In February 2012, Randolph married Long and bought a house on Maryland Street in Gary, Indiana. J.E.

moved to the Maryland Street home with Randolph, Long, and Long's other children when she was thirteen years old.

[7] Several more incidents took place at the Maryland Street address. While J.E. was in Randolph's bedroom, Randolph tried to insert his penis into her vagina. His penis went in "a little bit." Tr. p. 79. Another time, J.E. had just exited the bathtub, and Randolph came in the bathroom, rubbed his penis against her buttocks, pulled down her pants, and attempted to insert his penis into her anus. While Randolph was in the bathroom, Long walked into the bathroom but did not see what was going on because Randolph claimed that he was "looking for something." Tr. p. 80.

[8] Throughout the time that J.E. lived at the Maryland Street home, again when no one was home, Randolph called J.E.'s breasts "jibblies" and told her that they were "juicy" and were getting big and "perky." Tr. 81. On numerous occasions, Randolph would reach under J.E.'s shirt and grab her breasts with his hands and suck on her nipples. *Id.* On another occasion while J.E. and Randolph were in the basement sitting on the futon, Randolph performed oral sex on J.E.

[9] On July 20, 2012, when J.E. was fourteen years old, Long went out with her sister for the evening and left the children alone with Randolph. J.E.'s cousin, "K", called and asked J.E. if she could spend the night. J.E. told her that she could, and Randolph became angry that J.E. did not ask him for permission. J.E. went to her room after Randolph scolded her. Randolph then came into

J.E.'s room, pushed her down on the bed, held her arms down so she could not move, removed her clothes, and then removed his own clothes. Randolph rubbed his penis against her vagina and ejaculated on her bedspread. He then instructed J.E. to take her bedspread downstairs so he could wash it.

[10] J.E. told her cousin, "D", each time an incident with Randolph occurred, but she did not tell anyone else because Randolph threatened that if she told anyone what happened that Randolph would go to jail and J.E. would be put in foster care. After the July 20, 2012 incident, "D" finally told her mother, Carolyn, about what had happened to J.E. On July 22, 2012, J.E. moved out of the Maryland Street home and into her Aunt Tamieca's residence.

[11] On May 30, 2013, the State charged Randolph with two counts of Class A felony child molesting, Class A felony attempted child molesting, two counts of Class B felony sexual misconduct with a minor, Class C felony sexual misconduct with a minor, and Class C felony child molesting. A jury trial was held on August 4, 6, and 7, 2014. The jury found Randolph guilty on all charges.

[12] A sentencing hearing was held on March 20, 2015. The trial court found that Randolph was in a position of care and custody of J.E. and the events occurred over a prolonged period of time as aggravating circumstances. Randolph's lack of significant prior criminal history was found to be a mitigating circumstance. The court entered judgment on all counts except the Class A felony attempted child molesting charge. The court ordered Randolph to serve consecutive terms

of twenty years for each Class A felony conviction, ten years for each Class B felony conviction, and four years for each Class C felony conviction, for an aggregate sixty-eight-year sentence in the Department of Correction. Randolph now appeals one of the two Class A felony child molesting convictions and his sixty-eight-year aggregate sentence.

## I. Sufficiency of the Evidence

Randolph argues that the Class A felony child molesting conviction resulting from Count II of the charging information was not supported by sufficient evidence. "Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of witnesses, and respects the jury's exclusive province to weigh conflicting evidence. *Montgomery v. State*, 878 N.E.2d 262, 265 (Ind. Ct. App. 2007) (quoting *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)). We consider only probative evidence and reasonable inferences supporting the verdict. *Id.* We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

Randolph was charged with performing or submitting to sexual intercourse with J.E, a child under fourteen (14) years of age.[2] Randolph contends that the

---

[2] The Count I, Class A felony child molesting charge alleged that Randolph performed or submitted to deviate sexual conduct with J.E.

State failed to meet the sexual intercourse element of Class A felony child molesting because there was no proof of penetration. Indiana Code section 35-42-4-3(a)[3] provides:

> A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if: (1) it is committed by a person at least twenty-one (21) years of age;

Specifically, Randolph argues that the jury was instructed as to the legal definition of sexual intercourse as meaning an act that includes any penetration of the female sex organ by the male sex organ. Appellant's App. p. 82; Ind. Code § 35-31.5-2-302.

[15]     The State argued at closing that:

> [p]enetration means the slightest amount of the sex organ, not just the vagina. The vaginal area is within the sex organ. The slightest amount of the sex organ. That includes the vulva, that includes the labia minora, the labia majora.

Tr. p. 320; *see Mastin v. State*, 966 N.E.2d 197, 202 (Ind. Ct. App. 2012). This is a correct statement of the law. *See Morales v. State*, 19 N.E.3d 292, 298 (Ind. Ct. App. 2014) (holding that "[p]enetration of the external

---

[3] We note that, effective July 1, 2014, the statute was amended. However, because Randolph committed his crimes prior to this revision, we refer to the statue in effect at that time.

genitalia, or vulva, is sufficient to support an unlawful sexual intercourse conviction"); *see also Mastin*, 966 N.E.2d at 202 (citing *Pasco v. State*, 563 N.E.2d 587, 590 (Ind. 1990)) (holding that "[p]enetration can be inferred from circumstantial evidence").

[16] A conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *Parmley v. State*, 699 N.E.2d 288, 291 (Ind. Ct. App. 1998) (quoting *Heeter v. State*, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996)). J.E. testified at trial that when she was under fourteen years old, living at the Pennsylvania Street home, Randolph told her that he needed to speak to her about school and instructed her to follow him into his bedroom. Randolph then locked the door, took off J.E.'s clothing, pulled down his pants, climbed on top of her, and rubbed his penis against her vagina. Tr. p. 74. Randolph argues that J.E. also testified that no penetration or intercourse took place at the Pennsylvania Street home. However, J.E.'s testimony established that penetration occurred when Randolph rubbed his penis against her vagina with their clothes off.

[17] Randolph relies on his own testimony that this incident never occurred. The jury has the discretion to weigh J.E.'s credibility against Randolph's credibility. We must respect this discretion. *See McHenry,* 820 N.E.2d at 126. For all of these reasons, we conclude that the State presented sufficient evidence to support Randolph's conviction for Count II Class A felony child molesting.

## II. Inappropriate Sentence

[18]   Randolph further argues that his sentence is inappropriate in light of the nature of the offenses and his character. Under Indiana Appellate Rule 7(B):

> [We] may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.

When reviewing a sentence, our principal role is to "leaven the outliers" rather than necessarily achieve what is perceived as the "correct" result. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008) (citing *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind. 1996)). Therefore, the defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[19]   The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed in assessing the nature of the offense. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007). "The 'character of the offender' portion of the sentence involves consideration of the aggravating

and mitigating circumstances and general considerations." *Clara v. State*, 899 N.E.2d 733, 736 (Ind. Ct. App. 2009).

[20] Randolph was convicted of Count I, Class A felony child molesting; Count II, Class A felony child molesting; Count IV, Class B felony sexual misconduct with a minor; Count V, Class B felony sexual misconduct with a minor; Count VI, Class C felony sexual misconduct with a minor, and Count VII, Class C felony child molesting.[4] During the time of Randolph's offenses, the sentencing range for a Class A felony was twenty to fifty years, with thirty years being the advisory sentence. *See* Ind. Code §35-50-2-4. The sentencing range for a Class B felony was six to twenty years, with ten years being the advisory sentence. *See* Ind. Code § 35-50-2-5. The sentencing range for a Class C felony was two to eight years, with four years being the advisory sentence. *See* Ind. Code § 35-50-2-6.

[21] The trial court imposed a sentence of twenty years for Count I, twenty years for Count II, ten years for Count IV, ten years for Count V, four years for Count VI, and four years for Count VII. The trial court ordered that the sentences for Counts I, II, IV, V, VI, and VII be served consecutively, for an aggregate sentence of sixty-eight years.

[22] Concerning the nature of the offense, we observe that Randolph sexually abused J.E. for a period of five years, starting when J.E. was only nine years

---

[4] The trial court did not enter judgment on Count III, Class A attempted child molesting against Randolph.

old. After Mother left, Randolph was J.E.'s primary caregiver and assumed the role of J.E.'s father. He violated the position of trust he held with J.E. in committing these offenses. Further, Randolph threatened J.E. that if she told anyone what had happened that he would go to prison and that she would end up in foster care. Mother had already left J.E. when she was nine years old, and J.E. was afraid that she would lose contact with her other family members if she said anything about any of the incidents. Randolph manipulated J.E. and played on her fears to protect himself, which is particularly reprehensible.

[23] The trial court considered Randolph's lack of significant criminal history as a mitigating factor. Accordingly, the trial court imposed a minimum sentence for each of the Class A and B felony charges and an advisory sentence for each Class C felony to be served consecutively. In order to impose consecutive sentences, the trial court must find at least one aggravating circumstance. *Rhoiney v. State*, 940 N.E.2d 841, 846 (Ind. Ct. App. 2010). Here, the trial court noted Randolph's position of trust and the extended period of time over which the offenses were committed as aggravating circumstances. "The same aggravating circumstance may be used to both enhance a sentence and justify consecutive terms." *Id.* Therefore, the trial court's imposition of four minimum sentences and two advisory sentences to be served consecutively for an aggregate sentence of sixty-eight years in the Department of Correction was not inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

The State presented sufficient evidence to support Randolph's Count II Class A felony child molesting conviction. Further, Randolph's aggregate sixty-eight-year sentence imposed by the trial court was not inappropriate in light of the nature of the offenses and Randolph's character.

Affirmed.

Kirsch, J., and Brown, J., concur.