# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**KATHLEEN CLEARY**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana



FILED

Sep 19 2012, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DUANE TURNER,          )
                       )
    Appellant-Petitioner,          )
                       )
        vs.          )          No. 18A05-1112-PC-697
                       )
STATE OF INDIANA,          )
                       )
    Appellee-Respondent.          )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Linda Ralu Wolf, Judge
Cause No. 18D01-9410-CF-47

**September 19, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Duane Turner (Turner), appeals the post-conviction court's denial of his petition for post-conviction relief.

Affirmed in part, reversed in part, and remanded with instructions.

## ISSUES

Turner raises two issues on appeal, which we restate as the following:

(1) Whether the post-conviction court erred in determining that Turner's life sentence without parole is constitutional; and

(2) Whether Turner received effective assistance of counsel.

## FACTS AND PROCEDURAL HISTORY

Our supreme court reviewed the factual background in Turner's direct appeal as follows:

> On the evening of September 24, 1994, [Turner] and a group of friends drank and partied at a graveyard near Ball State University's campus. One friend, Larry Newton, decided that he wanted to go to Ball State and rob someone and asked [Turner] if [Turner] would join him. [Turner] agreed to go with him, and another friend, Chad Wright, agreed to take them in his car. Newton stated, "I'm hyped and I feel like killing somebody."
>
> Once on campus the three drove around until around 2:00 a.m. when they spotted Chris Coyle. Coyle, a Ball State student, was returning from walking home a female friend. They picked Coyle up and Newton demanded money from him. Coyle did not have any money and so stated. Newton forced Coyle out of the car and shot him in the back of the head. He then handed the gun to [Turner], who shot Coyle's body, now lying on the ground, in the shoulder. Coyle died from the first shot.

*Turner v. State*, 682 N.E.2d 491, 493-94 (Ind. 1997).

2

On October 19, 1994, the State filed an Information charging Turner with Count I, murder, a felony, Ind. Code § 35-42-1-1(1); Count II, criminal confinement, a Class B felony, I.C. § 35-42-3-3(1); Count III, conspiracy to commit robbery resulting in serious bodily injury, a Class A felony, I.C. §§ 35-42-5-1(1), -41-5-2; and Count IV, attempted robbery resulting in serious bodily injury, a Class A felony, I.C. §§ 35-42-5-1(1), -41-5-1. That same day, the State filed its Allegation of Capital Offense and Request for Life Sentence, in which it requested a sentence of life imprisonment without parole based upon the existence of two statutory aggravating circumstances: that Turner murdered Coyle by intentionally killing him while committing or attempting to commit (1) a robbery and (2) criminal gang activity. *See* I.C. §§ 35-50-2-9(b)(1)(G), -(I).

On May 8 through 12, 1995, a jury trial was held. On May 11, 1995, the jury found Turner guilty on all Counts and the trial court entered a judgment of conviction on Counts I and II. On May 12, 1995, in response to a double jeopardy issue raised by Turner's counsel, the trial court declined to find Turner guilty on Count III but entered a judgment of conviction on Count IV.

That same day, the jury convened to consider Turner's eligibility for life imprisonment without parole. The State presented evidence regarding Turner's affiliation with a criminal gang, eliciting testimony from police officers, persons connected with or members of Turner's criminal gang, and Turner's former probation officer. Turner produced mitigating evidence through testimony of his family members and the maintenance man of his apartment complex. Turner's family members testified

3

about his troubled childhood and upbringing stemming from an absent father and a drug-addicted and often incarcerated mother. Following deliberation, the jury was unable to return a recommendation for life imprisonment without parole. The trial court dismissed the jury.

On June 8, 1995, the trial court held a sentencing hearing. While Turner presented no evidence, the State presented testimony from a family friend of Coyle's and Coyle's parents. The State also introduced evidence regarding Turner's disruptive behavior while incarcerated through testimony from a corrections officer, Turner's probation officer, and the jailhouse psychologist, Dr. Gary Meunier (Dr. Meunier). Dr. Meunier concluded that Turner was a significantly disruptive inmate while at the Delaware County Jail, a psychopath, and a danger to society. However, Dr. Meunier qualified that his observations were based on general "everyday observations and everyday behaviors." (Transcript p. 2144).[1] Admittedly, he had not examined Turner apart from an initial interview and the basis for his testimony consisted of Turner's disciplinary reports. On cross-examination, Dr. Meunier conceded that his opinion of Turner was possibly erroneous because he had not performed a psychological evaluation on Turner. Dr. Meunier also admitted that psychopathy was not a formal diagnosis recognized by the American Psychiatric Association's then current version of the Diagnostic and Statistical

---

[1] We separately designate Turner's trial transcript and the transcript of the post-conviction proceedings. Turner's trial transcript will be referred to as "Transcript" or "Tr."

Manual (DSM). Nevertheless, Dr. Meunier explained that a narcissistic personality disorder, which is an element of psychopathy, was in the DSM.

Proceeding to sentencing, the trial court first sentenced Turner to the Department of Correction for twenty years on the criminal confinement conviction and forty-five years on the attempted robbery conviction, with sentences to run concurrently. The trial court reviewed eight mitigating factors and concluded that a majority were not applicable to Turner. However, the trial court noted that Turner had not been previously convicted of felony or a crime against a person. Further, the trial court noted Turner's assistance toward his siblings and grandparent. Turning to aggravating factors, the trial court found that Turner had three prior juvenile adjudications and ten pending adult charges, that prior attempts to rehabilitate Turner had been unsuccessful, that Coyle's family had requested an aggravated sentence, that the facts of the crimes were heinous, and that there was a significant risk that Turner would commit further crimes.

Turning to Turner's murder conviction, the trial court found that the State had proved beyond a reasonable doubt that Turner had intentionally killed Coyle while attempting to commit robbery and had also done so while committing criminal gang activity. Next, the trial court considered the statutory mitigating circumstances listed in I.C. § 35-50-2-9(c). In particular, the trial court concluded that there was no significant evidence that Turner was under extreme mental or emotional distress when the murder was committed despite evidence of Turner's troubled childhood. It also did not "see any substantial evidence of any mental defect" despite evidence from Dr. Meunier. (Tr. p.

5

2196). In sum, the trial court concluded that four additional mitigating circumstances existed: Turner's age of 19 at the time of the murder, his assistance to family members, his lack of a prior felony or crime against the person, and his troubled childhood. However, the trial court concluded that "their weight pales and is, at best, slight" when weighed and balanced against the statutory aggravating circumstances. (Tr. p. 2203). Determining that Turner committed a senseless act, the trial court found the risk that Turner would commit further crimes too great and imposed a life sentence without parole.

Turner appealed his convictions to our supreme court. He raised three issues on direct appeal: (1) the admission of his confession to police; (2) the admission of Ind. Evidence Rule 404(b) evidence; and (3) a fundamental error claim premised on the use of a disapproved jury instruction. The supreme court determined that evidence of probative value on the voluntariness of Turner's confession supported its admission into evidence, that the trial court did not abuse its discretion by admitting Rule 404(b) evidence, and that no fundamental error regarding the jury instruction existed.

On September 8, 2000, Turner filed a petition for post-conviction relief alleging ineffective assistance of counsel. On May 3, 2010, he filed an amended petition alleging that his sentence of life imprisonment without parole was unconstitutional under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One, Sections Twelve, Thirteen, Sixteen and Twenty-three of the Indiana Constitution. That same day, Turner filed a motion for summary judgment under Ind. Post-Conviction

6

Rule 1 § 4(g) regarding the constitutionality of his life sentence without parole. On August 2, 2010, the State filed its summary disposition motion and motion to strike portions of Turner's designated evidence. On August 24, 2010, the post-conviction court held a hearing on the parties' motions. On October 8, 2010, the post-conviction court issued findings of fact and conclusions thereon granting the State's motion for summary disposition and denying Turner's motion for summary judgment.

On September 29, 2011, the post-conviction court held an evidentiary hearing on Turner's amended petition. Turner presented testimony from two witnesses, his former attorney, who served as both Turner's trial and appellate counsel, and Dr. Bart Ferraro (Dr. Ferraro), an expert witness. On December 2, 2011, the post-conviction court issued its findings of fact and conclusions of law denying Turner relief.

Turner now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

On appeal, Turner challenges two rulings of the post-conviction court. First, Turner claims that the post-conviction court erred in denying his motion for summary judgment and granting the State's motion for summary disposition on his claim that his life sentence without parole violates the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Ring v. Arizona*, 536 U.S. 584 (2002). Second, Turner argues that the post-conviction court erred in denying his amended petition for post-conviction relief.

I. *Standard of Review*

7

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Id.* A petitioner must establish his claims to post-conviction relief by a preponderance of the evidence. P-C.R. 1, § 5.

Appeal from a denial of post-conviction relief is equivalent to an appeal from a negative judgment. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). We will therefore not reverse unless the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* at 643-44. Where the post-conviction court has entered findings of fact and conclusions of law, we accept the findings of fact unless clearly erroneous, but accord no deference for conclusions of law. *Id.* at 644. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*.

## II. *Summary Disposition*

Turner contends that the post-conviction court erroneously denied his motion for summary judgment but granted the State's motion for summary disposition. Specifically, Turner contends that under the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002), his life sentence without parole is unconstitutional because the jury did not return a unanimous recommendation of life imprisonment without parole.

We review the grant of a motion for summary disposition in post-conviction proceedings on appeal in the same way as a civil motion for summary judgment. *Norris v. State*, 896 N.E.2d 1149, 1151 (Ind. 2008). Summary disposition, like summary judgment, is a matter for appellate *de novo* review when the determinative issue is a matter of law, not fact. *Id*. It should be granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." P-C.R. 1 § 4(g).

Turner was convicted of murder, criminal confinement, and attempted robbery in May of 1995. The State sought a sentence of life imprisonment without parole, alleging two statutory aggravating circumstances under I.C. § 35-50-2-9(b)(1): that Turner murdered Coyle by committed an intentional killing while committing or attempting to commit attempted robbery or criminal gang activity. However, the jury failed to reach a recommendation on Turner's eligibility for life imprisonment and the trial court dismissed the jury. Consistent with I.C. § 35-50-2-9(f), the trial court dismissed the jury and convened a sentencing hearing on all convictions. The trial court found the required

aggravating circumstances proved beyond a reasonable doubt, weighed the aggravators against the mitigating factors, and sentenced Turner to life imprisonment without parole.

In *Apprendi*, the United States Supreme Court held that the Sixth Amendment to the United States Constitution requires that the jury find all matters necessary to enhance the punishment beyond a reasonable doubt. *Wilkes v. State*, 917 N.E.2d 675, 687 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010). The United States Supreme Court extended *Apprendi* to capital cases in *Ring*. *See Ring*, 536 U.S. at 609. As a result, a defendant subject to Indiana's statute on life without parole is entitled to a jury's determination that the State has proved beyond a reasonable doubt certain statutory aggravators rendering the defendant eligible for life without parole. *See Kiplinger v. State*, 922 N.E.2d 1261, 1265-266 (Ind. 2010).

Nevertheless, relying upon *Schriro v. Summerlin*, 542 U.S. 342 (2004), the State argues here that Turner's alleged *Ring* violation is "procedurally defaulted" and cannot be collaterally reviewed. (Appellee's Br. p. 21). In *Schriro*, the United States Supreme Court determined that, as a matter of federal law, *Ring* was not subject to retroactive application to collateral review. The Supreme Court held that by expressly allocating the fact-finding of statutory aggravators to the jury, "*Ring* announced a procedural rule which did not apply retroactively to cases final on direct review." *Id*. at 358. On the other hand, Turner relies upon our supreme court's decision in *Saylor v. State*, 808 N.E.2d 646 (Ind. 2004) to urge us that, as a matter of state law, *Ring* was made retroactive to post-

conviction proceedings and should therefore be applied to invalidate his life sentence imposed without a unanimous jury recommendation.

In *Saylor*, the defendant "was sentenced to death despite a unanimous jury recommendation to the contrary." *Id.* at 647. Saylor's sentence was affirmed by our supreme court on direct appeal and on post-conviction relief. *Id.* Following the denial of Saylor's petition for post-conviction relief, *Apprendi* and *Ring* were decided and the General Assembly amended I.C. § 35-50-2-9 to remove the trial court's ability to impose a death sentence without the jury's express recommendation. *See id.* at 648. On a motion for rehearing, both parties discussed whether *Ring* should be applied retroactively to invalidate Saylor's death sentence. *Id.* The supreme court observed that a "majority of courts to have considered the issue have held that *Ring* is an application of the procedural rule announced in *Apprendi*, and as such does not apply retroactively to cases on collateral review." *Id.* at 649. The supreme court also noted that *Schriro* had yet to be decided by the United States Supreme Court. *Id.* Rather than determining whether *Ring* would be applied retroactively under Indiana law, our supreme court instead elected not to address Saylor's claim, declaring as follows:

> At this writing we have no definitive decision on the retroactive application of *Ring* […]. For the reasons given below we do not need to await resolution of this federal constitutional issue, and also *do not address* whether, even if there is no federal requirement that *Ring* be applied retroactively, Indiana may nevertheless choose to apply it to pre-*Ring* convictions as a matter of state law.

*Id.* (emphasis added).

11

Clearly, the supreme court did not address whether *Ring* would be retroactively applied as a matter of Indiana law. *See id.* Instead, it found that under Ind. Appellate Rule 7(B), it was inappropriate to carry out a death sentence because Saylor "could not be sentenced to death without a jury recommendation that death be imposed." *Id.* at 650. Thus, Turner's contention that the supreme court retroactively applied *Ring* in *Saylor* fails.

Instead, we conclude that the supreme court's decision in *Holmes v. State*, 820 N.E.2d 136 (Ind. 2005), applies. Holmes had been sentenced to death by the trial court without a unanimous jury recommendation. *Id.* at 137. He sought permission to file a successive petition for post-conviction relief based on the supreme court's decision in *Saylor* and certain revisions made to I.C. § 35-50-2-9 in 2002, prompted by the *Apprendi* and *Ring* decisions. *Id.* In determining that *Saylor* did not entitle Holmes to relief, the supreme court noted that although Holmes had been sentenced to death by the trial court without a unanimous jury recommendation, the trial court was constitutionally permitted to do so under *Ring* and *Apprendi. See id.* at 138. Further, while I.C. § 35-50-2-9(d), as amended, required the use of special verdicts to confirm that the jury found the existence of aggravators beyond a reasonable doubt, the supreme court held that the lack of such special verdicts did not mean that the jury had not determined the existence of such factors. *Id.* at 139. Instead, the verdict returned during the guilt phase sufficed to establish that "the jury found, beyond a reasonable doubt, aggravating circumstances rendering Holmes eligible for the death penalty," including, specifically, I.C. § 35-50-2-

12

9-(b)(1) (intentional killing during the commission of an enumerated felony). *Id*. Consequently, *Apprendi*'s requirement that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt" was met by the nature of Holmes' convictions. *Id*.

Here, the jury unanimously found Turner guilty of murder and attempted robbery resulting in serious bodily injury. During the penalty phase, the jury was deadlocked on recommending life imprisonment without parole. Although its verdict would not support a finding that Turner intentionally killed Coyle while committing or attempting to commit criminal gang activity, in finding Turner guilty of both Coyle's murder and an attempted robbery resulting in serious injury, the jury necessarily found the existence of one statutory aggravating circumstance alleged by the State, *i.e.*, that Turner intentionally killed Coyle while committing or attempting to commit a robbery.

Turner attempts to distinguish *Holmes* by arguing that since the jury was instructed that it could find Turner guilty based on a theory of accomplice liability, it did not necessarily find beyond a reasonable doubt that he intentionally murdered Coyle during an attempted robbery. I.C. § 35-50-2-9(b)(1) requires a finding beyond a reasonable doubt that the defendant was a major participant in the killing and the killing was intentional. *Ajabu v. State*, 693 N.E.2d 921, 939 (Ind. 1998). This culpability requirement may rest on the jury's conviction for murder based on accomplice liability. *See Pittman v. State*, 885 N.E.2d 1246, 1257 (Ind. 2008).

13

Here, the jury was instructed that it could find Turner guilty based on accomplice liability.  After providing the statutory definition of murder — a knowing or intentional killing of another human being — the jury instruction specifically required that the jury find that Turner *intentionally* killed Coyle to convict him of murder.  Because I.C. § 35-50-2-9(b)(1) requires, for accomplice liability, the defendant's major participation in an intentional killing, the jury's verdict here necessarily suffices under *Holmes* as evidence that the jury had determined all facts necessary to enhance his sentence to life imprisonment without parole, regardless of whether their conclusion was based on accomplice liability.  Consequently, the post-conviction court did not err by denying Turner's constitutional challenge to his sentence of life imprisonment without parole.

### III.  *Ineffective Assistance of Counsel*

We next consider Turner's claims of ineffective assistance of trial and appellate counsel.  Turner's attorney acted as both trial and appellate counsel.  Turner's Petition raised seven grounds for relief based on his attorney's assistance as trial counsel and nine grounds for relief based on his assistance as appellate counsel.  The post-conviction court found that Turner had failed to establish relief by a preponderance of the evidence on all claims.

Ineffective assistance of counsel claims are subject to the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Johnson v. State,* 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), *trans. denied*.  Counsel's performance must fall below an objective standard of reasonableness in light of professional norms, and must

14

prejudice the defendant. *Id.* at 996-97. Prejudice is measured by inquiring whether there is a reasonable probability that the result would have been different but for counsel's performance. *See Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome." *Id.* An ineffective assistance of counsel claim fails if either prong of the *Strickland* test is not satisfied. *Henley*, 881 N.E.2d at 645.

We presume that counsel rendered adequate assistance and give considerable discretion to counsel's choice of strategy and tactics. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.* "If we can resolve a claim of ineffective assistance of counsel based on lack of prejudice, we need not address the adequacy of counsel's performance." *Fisher v. State*, 878 N.E.2d at 457, 463-64 (Ind. Ct. App. 2007), *trans. denied*.

## A. *Trial Counsel*

On appeal, Turner contends that his trial counsel (1) failed to adequately conduct a mitigation investigation by failing to procure a psychologist expert and (2) failed to contest the admission of victim impact testimony.

### 1. *Expert Testimony*

Turner first argues that his trial counsel was ineffective by failing to investigate and present mitigation evidence during the penalty phase and sentencing phases of his trial. Specifically, he contends that counsel's investigation and presentation of mitigating

15

evidence was deficient because he did not seek funds to retain an expert psychologist to (1) present mitigating evidence at the penalty and sentencing phase on Turner's functioning and personality structure, and (2) assist with rebutting testimony from a jailhouse psychologist.

a. *Additional Mitigating Evidence*

Regarding the first contention, Turner claims that the failure to retain an expert was not a tactical choice, but solely based on trial counsel's ignorance of the law. Turner argues that counsel could have made an *ex parte* request to obtain funds and after receiving the expert's report made the decision whether to present expert testimony at trial or retain such expert as a consultant. He maintains that these omissions prejudiced him because the mitigating evidence that was ultimately presented regarding Turner's deprivation and neglect as a child was insufficient since "testimony regarding the impact this had on Turner's functioning was absent" and the jury deadlocked on the penalty as a result. (Appellant's Br. p. 19).

At the post-conviction hearing, Turner presented testimony from his attorney that he had reservations about Turner's perceived lack of remorse and thus did not retain an expert for fear that the expert's report would confirm such lack of remorse and would be discoverable. He explained that he was not aware of *ex parte* filings for experts and felt that retaining an expert would have lessened his concerns over Turner's perceived lack of remorse. We note that claims of ineffective assistance of counsel based on a failure to investigate requires a showing of what additional information may have been garnered

16

from further consultation or investigation and how that additional information would have aided in the preparation of the case. *Coleman v. State*, 694 N.E.2d 269, 274 (Ind. 1998). The post-conviction court found that even if a psychological evaluation such as Dr. Ferraro's had been presented during the penalty and sentencing phases of the trial, "it is highly unlikely that it would have been found to be mitigating in any significant way." (Appellant's App. p. 753).

Here, Turner has not met his burden of showing that a psychological evaluation like the one performed by Dr. Ferraro would have resulted in a different result during the penalty and sentencing phases of his trial if it had been presented. Turner apparently argues that his psychological state as revealed by Dr. Ferraro's evaluation would have constituted compelling evidence in mitigation. We cannot agree. According to Dr. Ferraro, Turner suffered from an anxiety or mixed personality disorder resulting from a difficult childhood. Turner was prone to impulsive actions and had a proclivity to lash out in anger despite an awareness of its wrongfulness. Dr. Ferraro's evaluation also suggested that Turner possessed an average I.Q. and an awareness of the world around him. These traits, when weighed against the significant aggravators of the intentional killing during the commission of robbery, led the post-conviction court to conclude that "the only appropriate penalty for [Turner] is a sentence of life imprisonment without parole." (Appellant's App. p. 754).

At best, Dr. Ferraro's opinion provided evidence duplicative of the mitigating evidence offered by Turner's trial counsel during the penalty phase. Under these

17

circumstances, it is doubtful that Turner would have benefited from a psychological evaluation or if trial counsel elected to present evidence based on such evaluation during the penalty or sentencing phases. Thus, to the extent Turner claims additional evidence would have helped his cause during the penalty phase, we are unable to agree.

b. *Rebuttal Evidence*

In a related argument, Turner asserts that his counsel's performance was ineffective because counsel failed to rebut Dr. Meunier's testimony by cross-examining him as to Dr. Meunier's admitted failure to perform an evaluation of Turner prior to testifying during the sentencing phase of the trial.

While it is true that his trial counsel admitted his ignorance of American Psychiatric Association forensic guidelines that preclude a doctor from testifying without an evaluation; however, Turner has failed to demonstrate how this prejudiced him. Dr. Meunier viewed Turner as a psychopath based on his review of reports on Turner's jail house disruptions but admitted that he had not evaluated Turner. Under cross-examination, Dr. Meunier admitted that psychopathy was not a formal diagnosis appearing in the then current version of the DSM. Thus, Turner's counsel evoked the same result during cross-examination as Turner decrees his counsel was ineffective for not obtaining.

Furthermore, we are mindful that Dr. Meunier's testimony was given during the sentencing phase conducted by the trial court. In its sentencing statement, the trial court viewed Dr. Meunier's testimony in light of a statutory mitigating circumstance and gave

18

the testimony little weight. Consequently, Turner has not made a sufficient showing to defeat this presumption. Accordingly, we do not agree that Turner has established that his counsel was ineffective in this regard.

## 2. *Victim Impact Evidence*

Turner next argues that trial counsel was ineffective for failing to object to victim impact evidence relied upon by the trial court in imposing a life sentence. Turner's argument relies upon the trial court's mention of harm to the community resulting from Coyle's murder in its sentencing statement and order. Toward the end of its lengthy sentencing statement, the trial court stated that Turner's "crime is aggravated even more by the impact it had on the whole community," that "students really shouldn't have to live in fear while they are attempting to further their education," and that Turner's crime "robbed many of our young people of their innocence and their trust." (Tr. p. 2201-02).

During the sentencing phase, the State presented testimony from both of Coyle's parents and a member of the community. In concluding that Turner failed to demonstrate prejudice, the post-conviction court first relied upon the presumption that the trial court renders its decision solely on the basis of relevant and probative evidence in a sentencing hearing. *See Veal v. State*, 784 N.E.2d 490, 493 (Ind. 2003). It determined that even if trial counsel had objected, it would not have resulted in a different outcome. We agree.

Here, Turner was sentenced to life imprisonment along with two other crimes. Victim impact testimony was presented solely to the trial court rather than to a jury. The supreme court has found that victim impact testimony is inadmissible in the sentencing

19

phase of a trial if that testimony is irrelevant to the alleged aggravating factors. *Bivins v. State*, 642 N.E.2d 928, 956–57 (Ind. 1994), *cert. denied*, 516 U.S. 1077 (1996). The trial court's mention of the impact Turner's crimes had on the community was brief and the State did not emphasize it during its sentencing argument before the trial court. The trial court's sentencing statement contained substantial evidence in support of the statutory aggravators. Consequently, we cannot presume that the trial court was unable to separate admissible evidence for Turner's non-capital crimes from inadmissible evidence for the sentence of life imprisonment. Accordingly, Turner has not shown that his counsel was ineffective based on the limited victim impact testimony presented to the trial court.

### B. *Appellate Counsel*

Turner contends that his appellate counsel rendered ineffective assistance. In particular, Turner claims that he (1) failed to challenge the sufficiency of the evidence on statutory aggravating circumstances supporting his life sentence; (2) failed to argue that the trial court impermissibly relied on victim impact evidence; (3) failed to raise a double jeopardy claim; and (4) failed to challenge his life sentence.

The standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel's ineffective assistance: the petitioner must show deficient performance and resulting prejudice. *Rhoiney v. State*, 940 N.E.2d 841, 845 (Ind. Ct. App. 2010), *trans. denied*. Indiana law recognizes three basic categories for claims of appellate counsel's ineffectiveness: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id*. By asserting that his appellate counsel

failed to raise issues on appeal, Turner's claims fall into the second category. We use a two-part test to evaluate such claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues. *Id.* In other words, to prevail on a claim of ineffective assistance of appellate counsel, the information available in the trial record or otherwise known to appellate counsel shows that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *See id.* at 845-46.

## 1. *Sufficiency of the Evidence*

Turner first challenges his counsel's election not to contest the sufficiency of the evidence on the two statutory aggravators alleged by the State: that Turner committed the murder by intentionally killing [Coyle] while committing or attempting to commit robbery and criminal gang activity. Specifically, Turner argues that there was insufficient evidence of his specific intent to kill Coyle given that the jury could have found Turner guilty as an accomplice and was instructed that the use of a deadly weapon may be considered as evidence of intent to kill. Turner contends that because the evidence at trial showed that while Turner shot Coyle in the back, Newton actually fired the fatal shot first; therefore, the jury must have inferred Turner's specific intent to kill. Thus, Turner asserts that proof of the statutory aggravator impermissibly resulted from an inference upon an inference. Consequently, Turner argues that his counsel was

21

ineffective for failing to challenge the sufficiency of evidence demonstrating his intent to kill Coyle.

The post-conviction court concluded that Turner had not shown this issue to be obvious, significant, or clearly stronger than the other issues raised by his attorney on appeal. Further, it concluded that no prejudice resulted from appellate counsel's decision not to raise the sufficiency issue in light of the substantial evidence that Turner intentionally killed Coyle. We agree with the post-conviction court.

I.C. § 35-50-2-9(b)(1) permits a life sentence without parole only if the defendant has committed a murder by "intentionally" killing a victim while committing another crime. *Pittman v. State*, 885 N.E.2d 1246, 1257 (Ind. 2008). In *Ajabu*, our supreme court reviewed the findings required to support aggravating circumstances where the defendant was convicted under an accomplice theory. *Ajabu*, 693 N.E.2d at 936-37. First, a finding of the defendant's major participation in the killing is required. *Id*. Thus, "[a] person who substantially participates but does not deliver the fatal blow may still fall within the statute's scope" "even if someone else delivers the fatal blow." *Id*. at 937. Second, there must be a finding of an intentional killing, *i.e.*, the defendant's mental culpability must equate with "one who has engaged in conduct with a conscious objective to do so." *Id*. at 939.

Applying these standards, we find that the State presented sufficient evidence that Turner intentionally killed Coyle, whether as a principal or an accomplice. During the penalty phase, the State's only evidence that Turner intentionally killed Coyle while

22

committing attempted robbery was the jury's guilty verdicts. The State presented no further evidence and following the jury's deadlock the trial court concluded that the State had proved the statutory aggravator beyond a reasonable doubt, albeit finding an intentional killing based upon Turner's shooting of an unarmed Coyle from behind. The evidence showed that Newton, Turner and Wright confined Coyle in a vehicle, Newton demanded money, and Turner and Newton led Coyle down an alley where he was executed with Newton firing the first shot and Turner firing the second shot. These facts are sufficient to allow a jury to find that Turner intentionally killed Coyle either alone or in concert with Newton. Consequently, we agree with the post-conviction court that Turner's appellate counsel was not ineffective for declining to raise this issue on Turner's direct appeal.

Next, Turner contends that there was insufficient evidence that he intentionally killed Coyle while committing criminal gang activity and therefore appellate counsel was ineffective for not raising this issue on appeal. The post-conviction court did not specifically address whether the evidence supported this aggravating circumstance. However, I.C. § 35-50-2-9(l) requires that only one of the section (b) aggravating factors needs to be proven beyond a reasonable doubt and outweigh any existing mitigating factors before a sentence of life without parole. We therefore decline to address Turner's contention.

### 2. *Victim Impact Evidence*

Turner argues that his appellate counsel should have raised the issue of the trial court's alleged reliance on victim impact evidence when imposing the life sentence. However, as noted previously, this claim is without merit. Consequently, we do not find appellate counsel to have been ineffective as appellate counsel on this ground.

### 3. *Double Jeopardy*

Next, Turner contends that the post-conviction court erred in determining that appellate counsel was not ineffective for failing to appeal his conviction for attempted robbery as a Class A felony on double jeopardy grounds. Turner points to his counsel's admission that he would have raised a double jeopardy violation on appeal even if only to contest Turner's sentencing on the non-capital charges. The State concedes that counsel could have raised a double jeopardy claim on direct appeal and prevailed in reducing Turner's conviction for Class A felony attempted robbery to that of a class B felony for the same crime. However, the State contends that Turner suffered no prejudice because "the practical effect of the length of his sentences for the non-capital convictions is minimal" given his life sentence. (Appellee's Br. p. 44).

Here, the post-conviction court concluded that Turner did not demonstrate prejudice and thus did not meet his burden to show that this issue was obvious and significant, or even stronger than those raised by his counsel on appeal. It relied upon Indiana precedent recognizing that the use of facts to prove eligibility for capital sentencing differs from those used to prove the elements of a crime. *See Overstreet v. State*, 783 N.E.2d 1140, 1165 (Ind. 2003), *cert. denied*, 540 U.S. 1150 (2004). However,

24

the post-conviction court did not address whether Turner's sentence for Class A felony robbery constituted double jeopardy.

We find the State's argument untenable. Turner's robbery conviction was a Class A felony because it resulted in serious bodily injury. However, under double jeopardy principles, "where a single act forms the basis of both a Class A felony robbery conviction and also the act element of the murder conviction, the two cannot stand." *Gross v. State*, 769 N.E.2d 1136, 1139 (Ind. 2002). Coyle's death constitutes the serious bodily injury alleged by the State. Prejudice requires only a showing of a reasonable probability that the result of the proceeding would have been different. *See Grinstead*, 845 N.E.2d at 1031. Here, the proceeding would have been different, Turner would have been convicted for a Class B felony rather than a Class A felony. It is irrelevant what effect such outcome would have had in light of Turner's lifetime sentence. Appellate counsel's failure to raise a significant and obvious issue, one that is evident from the record and cannot be explained by any reasonable strategy constitutes ineffective assistance of counsel. *Rhoiney*, 940 N.E.2d at 845. If the issue may have resulted in reversal, such deficiency is prejudicial. Here, while counsel's strategy on appeal was to obtain a new trial for Turner, he acknowledged at the post-conviction hearing that he would have raised the issue if he had noticed it. In such case, "the proper remedy is to modify rather than reverse the conviction." *Heyward v. State*, 524 N.E.2d 15, 18 (Ind. Ct. App. 1988). Accordingly, we remand this case to the trial court with instructions to

25

reduce Turner's Class A felony robbery conviction to a Class B felony robbery conviction.

### 4. *Sentencing*

Finally, Turner asserts that appellate counsel was ineffective for failing to challenge his sentence on appeal. He alleges that appellate counsel should have challenged the sentence as manifestly unreasonable under the prior version of App. Rule 7(B).[2] His argument centers on the jury's inability to unanimously recommend life imprisonment, which he contends that the supreme court in light of its decision in *Saylor* would have found manifestly unreasonable. Above, we distinguished *Saylor* from the facts here and accordingly do not find that *Saylor* apples or that Turner's sentence would have been deemed manifestly unreasonable.

Turner also relies on the supreme court's decision in *Taylor v. State*, 840 N.E.2d 324, 342 (Ind. 2006), where the court found that Taylor's appellate counsel was ineffective by failing to challenge Taylor's sentence since the trial court's "aggravators were improper and others were weak." *Id.* Here, however, the evidence relied upon by the trial court in sentencing Turner was neither improper nor weak. Thus, Turner was not prejudiced and has therefore failed to demonstrate ineffectiveness of counsel.

### CONCLUSION

---

[2] At the time of Turner's direct appeal, sentences were reviewed according to App.R. 17(B) which provided "(1) the reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender;" and (2) "[a] sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

26

Based on the foregoing, we conclude that (1) the post-conviction court did not err in denying Turner's motion for summary disposition and granting the State's motion for summary judgment on the constitutionality of Turner's life sentence without parole. Further, the post-conviction did not err in denying Turner's petition for post-conviction relief based on ineffective assistance of trial counsel. With one exception, we find that the post-conviction court did not err in denying Turner's petition for post-conviction relief based on ineffective assistance of appellate counsel for failure to raise issues during Turner's direct appeal. However, we conclude that Turner has met his burden to prove by a preponderance of the evidence that his appellate counsel was ineffective by failing to challenge his conviction for Class A robbery resulting in serious bodily injury and we therefore remand with instructions to reduce the Class A felony robbery conviction to a class B felony robbery conviction.

Affirmed in part, reversed in part, and remanded with instructions.

BAILEY, J. and CRONE, J. concur