## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 07 2016, 8:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frances Lee Watson
Law Clinic
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kendrick Morris,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 7, 2016<br><br>Court of Appeals Case No.<br>49A02-1511-PC-2014<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Amy Barbar, Judge<br><br>Trial Court Cause No.<br>49G02-0105-PC-108789 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Kendrick Morris was convicted of attempted murder, aggravated battery, and unlawful possession of a firearm by a serious violent felon. The trial court sentenced Morris to sixty years executed in the Indiana Department of Correction. On direct appeal, we affirmed Morris's convictions. *Morris v. State*, No. 49A05-0205-CR-225, slip op. at 2–4 (Ind. Ct. App. Feb. 5, 2003) ("*Morris I*"). Thereafter, we affirmed the denial of post-conviction relief. *Morris v. State*, 49A02-0610-PC-880, slip op. at 9 (Ind. Ct. App. Jan. 30, 2008) ("*Morris II*"), *trans. denied*. In 2014, with the permission of this court, Morris filed a second petition for post-conviction relief, arguing newly discovered evidence warranted a new trial. Following an evidentiary hearing, the post-conviction court denied Morris's petition. Morris now appeals, raising the sole issue of whether the post-conviction court erred in concluding an eyewitness's recantation of trial testimony identifying Morris as the shooter did not constitute newly discovered evidence sufficient to warrant a new trial. Concluding the post-conviction court did not err, we affirm.

# Facts and Procedural History

[2] We summarized the facts of this case in Morris's direct appeal.

> On April 14, 2001, then thirteen-year-old Tiara McGinty was about to leave her home on Carrollton Avenue in Indianapolis when she observed two men dressed in black, hooded shirts standing on the porch holding guns. The front door of the residence was open but the screen door was closed. Tiara was

standing inside the house behind the screen door when the men began shooting at the door. Tiara turned to fall on the ground, and the men shot her in the legs and back. One bullet entered one of her thighs and exited out the other thigh. Another bullet entered her back, hit her lung, bruised her heart, broke her rib, hit her liver and lodged in her stomach. She had surgery to remove the bullet in her stomach and was hospitalized for eighteen days.

During an interview with Indianapolis Police Detective Jeffrey Wager, Tiara identified Morris as one of the shooters. Detective Wager later interviewed LeShaun Mickens, Tiara's cousin and an eyewitness to the shooting. During an audiotaped statement, Mickens also identified Morris as one of the shooters.

The State charged Morris with attempted murder, aggravated battery, and unlawful possession of a firearm as a serious violent felon. At trial, Mickens repudiated her out-of-court statement and stated that she could not identify the persons involved in the shooting. She further testified that Detective Wager told her the identity of the shooters and asked her to lie.

At that point, the State sought to introduce Mickens's out-of-court statement. Morris's counsel moved to suppress the statement, alleging that it was coerced, was improper impeachment evidence, and, contrary to the State's contention, was not admissible under Indiana Evidence Rule 801(d). The court held a hearing outside the jury's presence, listened to the taped statement, and heard testimony from Detective Wager. Following the hearing, the court found that Mickens's statement was not coerced and admitted the tape into evidence. Subsequently, the State played the tape for the jury. Then, during the State's direct examination of Detective Wager, he testified regarding his May 14, 2001 interview with Mickens and the statement he took from her. Morris's counsel objected on the same grounds articulated during the suppression hearing, and the trial court allowed the detective's testimony.

Larry Beverly and Anthony McGinty also testified at trial. Beverly testified, in relevant part, that he often stayed at the residence on Carrollton Avenue where Tiara was shot. He further stated that he knew Morris and the other co-defendants and that prior to the shooting, he had told them not to come to the residence on Carrollton Avenue anymore. The State asked Beverly whether Morris and the others were angry when he told them not to come around the house, and Beverly stated that they were not. The State then used two pretrial statements Beverly had given to police to impeach his testimony.

McGinty testified, in part, that he is Tiara's uncle and lives at the Carrollton Avenue residence. He explained that the defendants had stayed overnight at his house on several occasions. He also testified that the day before the shooting, he told Morris and the other two defendants that they could not come over to his house anymore. When McGinty denied the State's suggestion that he backed the defendants "out onto [his] front porch" and told them they could not come over, the State used a pretrial statement McGinty had given to an officer to impeach his statement. McGinty also denied making a statement to the officers that Morris and the defendants were mad when he told them they could not come to his house anymore. Again, the State impeached his testimony with a pretrial statement. Morris's counsel did not object to the State's use of Beverly and McGinty's pretrial statements. The jury found Morris guilty as charged[.]

*Morris I*, slip op. at 2-4 (alterations in original). We affirmed Morris's convictions, and in *Morris II*, affirmed the post-conviction court's denial of post-conviction relief.

[3] On August 27, 2014, Morris filed a Successive Petition for Post-Conviction Relief, alleging the victim, Tiara McGinty, recanted her trial testimony at an

evidentiary hearing on a petition for post-conviction relief filed by Wesley Young, a co-defendant. *See Young v. State*, No. 49A02-1209-PC-753, slip op. at 5-6 (Ind. Ct. App. July 10, 2013), *trans. denied*. The post-conviction court held an evidentiary hearing at which Tiara testified she was coerced by police into identifying Morris as one of the shooters and claimed she never truly knew the identity of the perpetrators. On October 27, 2015, the post-conviction court entered its findings of fact and conclusions, denying Morris post-conviction relief:

Findings of Fact

* * *

7. At the evidentiary hearing, Tiara McGinty testified that at the time of the shooting she was thirteen years old. She acknowledged that she identified [Morris] several times at the trial of this case on direct questioning by the State and in the face of cross-examination by [Morris's] and his co-defendants' trial counsels. Regardless, Ms. McGinty maintained that her previous identifications were lies, and that she "knew in her heart" that Morris was not one of the shooters, because of his prior personal association with her.

8. The Court finds that in her trial testimony Ms. McGinty also acknowledged that she had identified [Morris] to detectives shortly after the shooting, in a taped statement to Det. Wager after she was out of hospital, and in a taped statement to [Morris's] counsel (Allan Reid) before trial. She corrected Mr. Reid in his cross-examination as follows: "[Did you] [t]ell Det. Wager they had black masks on their faces?" McGinty: "Just one." She testified the statement was wrong that "they" had masks, because "it was only on one face." She testified "I saw

his face because he had—he just had his forehead covered up." She was asked on re-direct "Do you have any doubt . . . that Kendrick Morris is the person that you saw?" "I have no doubt." Further, she clearly identified each of the three defendants as someone she knew, but she was equally clear that [Morris] was the only person she could identify as a shooter.

9. The Court finds that at the February 15, 2012 evidentiary hearing in co-defendant Wesley Young's PCR, Ms. McGinty also repudiated her previous identification. She initially testified that she was told who to identify by Det. Wager. On further questioning, she stated that "[H]e basically told me that the three men that was in question was the ones who shot me." Ultimately, Ms. McGinty claimed that in fact she did not identify Morris or anyone as a shooter, instead she claimed that, "The only reason that I identified them . . . he didn't say identify the shooters, he asked me 'did I know these men'. So by knowing these men I could identify them. He gave me those papers and asked me to identify these men and of course I could identify them, because I know them, but I didn't say I identify them as shooters."

10. Det. Wager testified at the PCR hearing that he showed Tiara photo arrays the second time he talked to her, at her grandmother's. [Morris], Wesley Young, and Steven Kendall had been established as suspects through Tiara's grandmother and uncle, Anthony McGinty. He asked her if she recognized anyone in the pictures. He then asked if she recognized anybody here that shot her. She told him she was looking in "the eyes of her shooter and it was Kenny Mack."[1]

---

[1] Tiara knew Morris by the nickname of Kenny Mack.

Conclusions of Law

* * *

2. [Morris] claims that Tiara McGinty's repudiation of her trial testimony is newly discovered evidence which mandates a new trial. There is a nine-part test for determining whether to grant a new trial based on newly discovered evidence . . . .

* * *

Initially, the cort [sic] finds that the proffered evidence fails to meet the fourth prong. In the context of this case, the only real function of Tiara McGinty's repudiation of her prior testimony is to undermine her credibility. An analysis of the testimony at trial and at the evidentiary hearing reveals substantial evidence that belies McGinty's repudiation of her prior testimony. McGinty gave essentially the same statements to the police during the investigation, she testified consistently in her discovery statement, and she repeated her testimony at trial under direct and cross examination. Consequently, the Court finds the proffered testimony is merely impeachment.

The Court finds that Tiara McGinty's proffered testimony is not worthy of credit, and therefore fails the seventh prong of the test. Whether a witness's testimony at a post-conviction hearing is worthy of credit is a factual determination to be made by the trial judge who has the opportunity to see andhear [sic] the witness testify. As previously noted, Ms. McGinty's testimony at the evidentiary hearing directly contradicts her testimony and statements at trial, and in discovery. McGinty accuses law enforce ment [sic] of misleading and coercing her into making false statements, however, she did not repudiate her very unequivocal identification at trial, nor even in her discovery statement, when she made no claim of trickery. The Court finds

its [sic] rather incredible that under these circumstances, even a thirteen year old would so profoundly misunderstand the questions put to her by a police detective. She did not explain why she only identified [Morris], even though she repeatedly acknowledged knowing all three men, and presumably flet [sic] just as "coerced" by the police to name all three as participants in the crime. She never said the police "coercion" was aimed specifically at [Morris] or anyone else. The Court finds it telling that while she acknowledged making essentially the same statements to [Morris's] trial counsel, she does not claim any coercion on the attorney's part. Therefore the Court finds that Tiara McGinty's proffered repudiation lacks credibility and thus fails the seventh prong.

Finally, the Court finds that the proffered testimony is unlikely to produce a different result at a putative re-trial, and consequently the proffer fails the ninth prong. In determining whether new evidence would produce a different result in a new trial, the trial court may consider the weight that a reasonable jury wuld [sic] give it and may evaluate the probable impact the evidence would have in a new trial considering the facts and circumstances shown at the first trial. Although it is generally the duty of the jury to determine the credibility of the witnesses, on a motion for a new trial based on newly discovered evidence, the trial court must assess the credibility of any proffered new evidence. The Court has already stated its opinion on the credibility of the repudiation. [Morris] argues that in the absence of her identification, there is no basis for conviction. While McGinty's testimony might be impeached at a new trial, it would also be subject to rehabilitation, and thus the new testimony would not necessarily be destructive of the State's case. Further, the presence [or] absence of corroboration is not in and of itself controlling.

Appellant's Appendix at 28-32 (some alterations in original) (internal quotation marks and citations omitted). This appeal ensued. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

[4] "Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. Post-conviction procedures create a narrow remedy for subsequent collateral challenges to convictions. *Id.* The petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

[5] A petitioner who has been denied post-conviction relief faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). In reviewing the judgment of a post-conviction court, we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). We may not reweigh the evidence or reassess the credibility of the witnesses. *Id*. at 468-69. The post-conviction court's denial of post-conviction relief will be affirmed unless the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Only where the evidence is without conflict and leads to but one conclusion, and the post-

conviction court reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Hall*, 849 N.E.2d at 469. Finally, we do not defer to the post-conviction court's legal conclusions, but do accept its factual findings unless they are clearly erroneous. Ind. Trial Rule 52(A); *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003).

## II. Newly Discovered Evidence

[6] Morris argues the post-conviction court erred in denying his request for a new trial based on newly discovered evidence. Evidence will mandate a new trial only when the petitioner demonstrates (1) the evidence has been discovered since the trial, (2) it is material and relevant, (3) it is not cumulative, (4) it is not merely impeaching, (5) it is not privileged or incompetent, (6) due diligence was used to discover it in time for trial, (7) the evidence is worthy of credit, (8) it can be produced upon a retrial of the case, and (9) it will probably produce a different result at retrial. *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000). The post-conviction court concluded Morris did not satisfy prongs four, seven, and nine. On appeal, we "analyze[] these nine factors with care, as '[t]he basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Id.* (second alteration in original) (quoting *Reed v. State*, 508 N.E.2d 4, 6 (Ind. 1987)). The burden of showing that *all nine* requirements are met rests with the petitioner. *Taylor v. State*, 840 N.E.2d 324, 330 (Ind. 2006).

Morris has not shown Tiara's testimony satisfies the requirements noted above. Most apparent, Tiara's recantation testimony is merely impeaching of her own trial testimony. At the post-conviction hearing, the premise of Tiara's testimony served to support the notion she lied during an interview with Detective Wager, an interview with Morris's trial counsel, and again when she testified at trial. We fail to see how using Tiara's recantation testimony to show she lied before and during trial would be anything other than impeaching and conclude Tiara's testimony at the evidentiary hearing only serves to undermine her own credibility. *See id.* (concluding a witness's affidavit stating he lied during trial did not constitute newly discovered evidence because the affidavit would show the witness was merely lying at trial thereby undermining his own credibility). The post-conviction court's finding that Morris did not satisfy the fourth prong of the test for newly discovered evidence is not clearly erroneous. Because Morris cannot satisfy at least one of the prongs noted above, the post-conviction court did not err in denying Morris relief.

[8] Although not necessary for this appeal, we further note the post-conviction court did not err in concluding Morris also did not satisfy the seventh and ninth prongs. As noted above, Tiara now claims Detective Wager coerced or tricked her into identifying Morris as one of the shooters. Detective Wager testified at the evidentiary hearing he made clear to Tiara that, in identifying Morris, she was identifying one of the shooters, not just an acquaintance. *See Hall*, 849 N.E.2d at 468-69 (noting we will not reassess witness credibility). Given Detective Wager's testimony and the fact Tiara consistently identified Morris as

one of the shooters during her interview with Morris's counsel, the State's direct examination, and three separate cross-examinations—occurrences in which she does not claim she was tricked or coerced—we conclude the trial court's finding that Tiara's recantation testimony cannot be considered worthy of credit is not clearly erroneous.

[9] As to the ninth prong, in determining whether newly discovered evidence would likely produce a different result at a new trial, the post-conviction court may consider the weight a reasonable trier of fact would give the evidence and may evaluate the probable impact the evidence would have in a new trial considering the facts and circumstances shown at the original trial. *Nunn v. State*, 601 N.E.2d 334, 337 (Ind. 1992). The newly discovered evidence must raise a strong presumption a new trial would achieve a different result. *Id*. Here, we note even if Tiara testified at a new trial, the State would have an opportunity to rehabilitate her testimony not only by introducing her prior testimony, but also her multiple consistent statements made before trial identifying Morris as one of the shooters. Finally, we note Tiara was not the only eyewitness. Prior to trial, Mickens also identified Morris as one of the shooters in an audiotaped statement, which the State admitted as substantive evidence under Evidence Rule 801(d) after Mickens repudiated her identification of Morris at trial.[2] Therefore, we are not persuaded Tiara's

---

[2] On direct appeal, Morris challenged the admission of Mickens's prior statement identifying Morris as one of the shooters. We found no error. *See Morris I*, slip op. at 7.

testimony raises a strong presumption a new trial would achieve a different result.

[10] Accordingly, the post-conviction court did not err in denying Morris's petition for post-conviction relief.

# Conclusion

[11] The post-conviction court's finding that Morris did not establish Tiara's recantation was newly discovered evidence sufficient to warrant a new trial is not clearly erroneous. Accordingly, we affirm.

[12] Affirmed.

Najam, J., and Crone, J., concur.